Reed, J.,
delivered the opinion of the court.
Upon the trial it was properly held by the court, inter alia, that the plaintiff by its own acts was estopped to claim the defendants as stockholders. They not having questioned the validity of the ex parte proceedings of the company, but acquiescing in them, it could not assert the illegality of its own proceedings and reinstate the parties as stockholders. This conclusion is eminently correct and needs no support from authorities. But in the findings of the court upon which its judgment was based there was serious error. After finding that on the 29th of November, 1890, the stock of the defendants was sold and passed to the company and defendants ceased to be stockholders, it found that there was hut one diteh, and that defendants by reason of their ownership in the original ditch were liable to assessment to keep the whole system in repair.
As a physical fact there was but one ditch; legally there were two, two distinct legal entities that had never merged or become identical. See Nichols v. McIntosh, 19 Colo.-
By the decree of the district court establishing priorities from Kannah creek it was declared that the Brown and Campion ditch was entitled to priorities Nos. 5 and 8, that priority No. 5 belonged to Joseph Simineo, Dennis Sullivan, John J. McKay and Daniel W. Collard, and was in quantity 8.6 cubic feet of water per second, and that priority No. 8 belonged to defendant in error and other parties, naming them, having a subsequent right to 22 feet per second. No action was taken *514 consolidating the interests. Both remained separate and distinct, and as far as priority was concerned the new ditch was subservient, not being able to take water only in excess of the prior appropriation.
If there was but one ditch I am at a loss to know why it should be the second instead of the first, and by what process the original became absorbed in the second and lost its identity. The statute provides that, to prevent multiplicity of ditches, when practicable, water shall be carried in a former ditch. This was done here. Repairs upon the new ditch from the terminus of the old were no more legally chargeable to the other proprietors than the putting in and harvesting a crop. The keeping the headgate and ditch to its original terminus in repair was the duty of both sets of owners, the expense to be adjusted upon an equitable basis ; beyond this the first proprietors had no interest and owed no duty. The error of the court was in not regarding the enterprises as two separate and distinct legal entities, with only an interest in common to the extent of the original ditch for the purpose of repair. The right to levy assessments by the defendant in error could only, if at all, be legally predicated upon ownership of stock. When plaintiffs by act of the company ceased' to be stockholders, neither they nor their associates in the original ditch by reason of such ownership could in any way be made liable for repairs beyond the limits of the ditch as originally constructed.
If plaintiffs and associates failed to contribute their proper proportion to maintain the ditch from the head to the original terminus, no doubt an action for contribution would lie; beyond that they owe no duty legal or equitable.
Several errors are assigned and are discussed in briefs and arguments of counsel which we do not find it necessary to determine. The error of the court in regard to the legal status of the parties and property is sufficient to warrant a reversal.
The judgment of the court will be reversed, and cause remanded for a new trial upon the basis above indicated.

Reversed.